# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

DANIEL DURBOROW,

               Plaintiff,

v.                                     Case No. 6:22-cv-2295-JRK

MARTIN J. O'MALLEY,
Commissioner of Social Security,[1]

               Defendant.

_____/

## **OPINION AND ORDER**[2]

## I.  Status

    Daniel Durborow ("Plaintiff") is appealing the Commissioner of the Social Security Administration's ("SSA('s)") final decision denying his claims for disability insurance benefits ("DIB") and supplemental security income ("SSI"). Plaintiff, who filed for disability following a March 2020 car accident, alleges an inability to work as the result of numbness in his hands, a weak grip in his right hand, left arm tingling, a left eye fracture, a spinal cord injury, tingling in his

---

[1]    Mr. O'Malley was sworn in as Commissioner of the Social Security Administration on December 20, 2023. Pursuant to Rule 25(d)(1), Federal Rules of Civil Procedure, Mr. O'Malley should be substituted for Kilolo Kijakazi as Defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2]    The parties consented to the exercise of jurisdiction by a United States Magistrate Judge. See Notice, Consent, and Reference of a Civil Action to a Magistrate Judge (Doc. No. 18), filed March 7, 2023; Reference Order (Doc. No. 20), signed March 9, 2023 and entered March 10, 2023.

legs, problems with muscles locking up, and nerve damage in his neck. Transcript of Administrative Proceedings (Doc. No. 19; "Tr." or "administrative transcript"), filed March 7, 2023, at 95, 106, 117, 133, 321.

On May 11, 2020, Plaintiff protectively filed applications for DIB and SSI, alleging a disability onset date of March 10, 2020. Tr. at 299-305 (DIB), 289-98 (SSI); see also Tr. at 95, 117 (DIB), 106, 133 (SSI). The applications were denied initially, Tr. at 93, 94-103, 149, 151, 152-58 (DIB); Tr. at 104, 105-14, 159, 161, 162-68 (SSI), and upon reconsideration, Tr. at 115, 116-30, 173, 175, 176-88 (DIB); Tr. at 131, 132-46, 189, 191, 192-204 (SSI).[3]

On July 20, 2021, an Administrative Law Judge ("ALJ") held a hearing, during which she heard from Plaintiff, who was represented by counsel, and a vocational expert ("VE").[4] Tr. at 46-77. After the hearing, on August 27, 2021, the VE from the hearing submitted written responses to the ALJ's vocational interrogatories; Plaintiff provided a different VE opinion by way of written interrogatories; and additional medical evidence was received. Tr. at 382-387, 392-95, 405-07. On March 14, 2022, the ALJ held a supplemental hearing,

---

[3]        Some of the cited documents are duplicates.

[4]        The hearing was held via telephone, with Plaintiff's consent, because of extraordinary circumstances caused by the initial stages of the COVID-19 pandemic. Tr. at 48.

during which she mainly heard from the VE.[5] Tr. at 32-44. On May 19, 2022, the ALJ issued a Decision finding Plaintiff not disabled through the date of the Decision. <u>See</u> Tr. at 15-26.

Thereafter, Plaintiff requested review of the Decision by the Appeals Council and submitted a brief authored by his counsel in support. Tr. at 4-5 (Appeals Council exhibit list and order), 286-88 (request for review), 411-17 (brief). On October 25, 2022, the Appeals Council denied Plaintiff's request for review, Tr. at 1-3, making the ALJ's Decision the final decision of the Commissioner. On December 9, 2022, Plaintiff commenced this action under 42 U.S.C. §§ 405(g) and 1383(c)(3) by timely filing a Complaint (Doc. No. 1) seeking judicial review of the Commissioner's final decision.

Plaintiff on appeal makes two arguments: 1) "In violation of applicable regulations governing the analysis of medical source opinions, the [ALJ] erred in relying on outdated nonexamining state agency physician opinions that were inconsistent with the opinions of examining physicians, treating specialists, and the record as a whole regarding [Plaintiff's] upper extremity limitations"; and 2) "The [ALJ] erroneously evaluated [Plaintiff's] symptoms in violation of Social Security Ruling 16-3p and erred in relying on gaps in treatment as a

---

[5] This hearing was also held via telephone, with Plaintiff's consent, because of extraordinary circumstances caused by the initial stages of the COVID-19 pandemic. Tr. at 34.

basis for denial even though [Plaintiff] testified that he could not afford treatment and had been unsuccessful in his efforts to obtain low cost medical care." Plaintiff's Brief (Doc. No. 24; "Pl.'s Br."), filed May 6, 2023, at 1 (emphasis omitted); see id. at 8-23 (argument one), 23-25 (argument two). On July 27, 2023, Defendant filed a Memorandum in Support of the Commissioner's Decision (Doc. No. 29; "Def.'s Mem.") addressing Plaintiff's arguments. Then, as permitted, on August 10, 2023, Plaintiff's Reply Brief (Doc. No. 30; "Reply"), was filed. After a thorough review of the entire record and consideration of the parties' respective arguments, the undersigned finds that the Commissioner's final decision is due to be affirmed.

## II.  The ALJ's Decision

When determining whether an individual is disabled,[6] an ALJ must follow the five-step sequential inquiry set forth in the Regulations, determining as appropriate whether the claimant (1) is currently employed or engaging in substantial gainful activity; (2) has a severe impairment; (3) has an impairment or combination of impairments that meets or medically equals one listed in the Regulations; (4) can perform past relevant work; and (5) retains the ability to

---

[6]      "Disability" is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

perform any work in the national economy. 20 C.F.R. §§ 404.1520, 416.920; see also Simon v. Comm'r, Soc. Sec. Admin., 7 F.4th 1094, 1101-02 (11th Cir. 2021) (citations omitted); Phillips v. Barnhart, 357 F.3d 1232, 1237 (11th Cir. 2004). The claimant bears the burden of persuasion through step four, and at step five, the burden shifts to the Commissioner. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

Here, the ALJ followed the five-step inquiry through step four, where she ended the inquiry based on her findings at that step. See Tr. at 19-26. At step one, the ALJ determined that Plaintiff "has not engaged in substantial gainful activity since March 10, 2020, the alleged onset date." Tr. at 18 (emphasis and citation omitted). At step two, the ALJ found that Plaintiff "has the following severe impairments: acute traumatic fractures of the C6 spinous process and left C7 transverse process and multilevel degenerative changes of the cervical spine." Tr. at 18 (emphasis and citation omitted). At step three, the ALJ found that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 [C.F.R.] Part 404, Subpart P, Appendix 1." Tr. at 18 (emphasis and citation omitted).

The ALJ determined that Plaintiff has the following residual functional capacity ("RFC"):

[Plaintiff can] perform light work as defined in 20 CFR [§§]

5

404.1567(b) and 416.967(b) except he could lift and/or carry up to twenty pounds occasionally and ten pounds frequently. He could sit for six hours in an eight-hour day and stand/walk for six hours in an eight-hour day. He could perform unlimited pushing and pulling. He could occasionally balance, stoop, kneel, crouch, crawl; and climb ramps, stairs, ladders, and scaffolds. He could have occasional exposure to unprotected heights and dangerous moving machinery.

Tr. at 19 (emphasis omitted).

At step four, the ALJ relied on the VE's hearing testimony and found that Plaintiff "is able to perform past relevant work as a cashier, gambling" because the "work does not require the performance of work-related activities precluded by [Plaintiff's RFC]." Tr. at 25 (emphasis, some italics, and citation omitted). The ALJ concluded Plaintiff "has not been under a disability . . . from March 10, 2020, through the date of th[e D]ecision." Tr. at 26 (emphasis and citation omitted).

### III.  Standard of Review

This Court reviews the Commissioner's final decision as to disability pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). Although no deference is given to the ALJ's conclusions of law, findings of fact "are conclusive if . . . supported by 'substantial evidence.'" Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001) (citing Falge v. Apfel, 150 F.3d 1320, 1322 (11th Cir. 1998)). "Substantial evidence is something 'more than a mere scintilla, but less than a preponderance.'" Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005)

(quoting <u>Hale v. Bowen</u>, 831 F.2d 1007, 1011 (11th Cir. 1987)). The substantial evidence standard is met when there is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Falge</u>, 150 F.3d at 1322 (quoting <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971)); <u>see also</u> <u>Biestek v. Berryhill</u>, 139 S. Ct. 1148, 1154 (2019); <u>Samuels v. Acting Comm'r of Soc. Sec.</u>, 959 F.3d 1042, 1045 (11th Cir. 2020) (citation omitted). It is not for this Court to reweigh the evidence; rather, the entire record is reviewed to determine whether "the decision reached is reasonable and supported by substantial evidence." <u>Cornelius v. Sullivan</u>, 936 F.2d 1143, 1145 (11th Cir. 1991) (citation omitted). The decision reached by the Commissioner must be affirmed if it is supported by substantial evidence—even if the evidence preponderates against the Commissioner's findings. <u>Crawford v. Comm'r of Soc. Sec.</u>, 363 F.3d 1155, 1158-59 (11th Cir. 2004) (per curiam).

## IV.  Discussion

Plaintiff challenges the ALJ's evaluation of the medical opinions and Plaintiff's subjective complaints (particularly in light of Plaintiff's inability to afford treatment). The issues are addressed in turn.

### A. Medical Opinion Evidence

Plaintiff contends the ALJ erred in "relying on outdated state agency nonexamining opinions from [Prianka Gerrish, M.D. and Loc Kim Le, M.D.,] consultants who reviewed the first month of progress notes during [Plaintiff's]

7

extended hospitalization and a single report from [Pedro] Betances[, M.D.]." Pl.'s Br. at 8; see Reply at 2-3. Plaintiff also contends it is problematic that the ALJ omitted reference to the treating neurosurgeon's note that surgery would be necessary in the near future. Pl.'s Br. at 8; Reply at 2-3. Finally, Plaintiff asserts the ALJ erroneously rejected opinions of examining physician William Choisser, M.D., and medical expert ("ME") Jason Lin, M.D., a board certified neurologist. Pl.'s Br. at 8-9.

Responding, Defendant argues "the ALJ considered both consistency and supportability in evaluating the opinions, as required by the regulations applicable to this claim." Def.'s Mem. at 1. According to Defendant, "the ALJ articulated substantial evidence for finding that the medical opinions were either persuasive or unpersuasive." Id. at 13.

The SSA revised the rules regarding the evaluation of medical evidence for claims filed on or after March 27, 2017. See Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844, 5844 (January 18, 2017); see also 82 Fed. Reg. 15,132 (March 27, 2017) (amending and correcting the final Rules published at 82 Fed. Reg. 5,844). Under the new rules and Regulations, "A medical opinion is a statement from a medical source about what [the claimant] can still do despite [his or her] impairment(s) and whether [the claimant] ha[s] one or more impairment-related limitations or restrictions in the following abilities:" 1) the "ability to perform physical demands of work

activities"; 2) the "ability to perform mental demands of work activities"; 3) the "ability to perform other demands of work, such as seeing, hearing, or using other senses"; and 4) the "ability to adapt to environmental conditions." 20 C.F.R. § 404.1513(a)(2); see also 20 C.F.R. § 404.1502 (defining "[a]cceptable medical sources"). An ALJ need not "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources." 20 C.F.R. § 404.1520c(a).[7] "Because section 404.1520c falls within the scope of the Commissioner's authority and was not arbitrary and capricious, it abrogates [the United States Court of Appeals for the Eleventh Circuit's] prior precedents applying the treating-physician rule." Harner v. Soc. Sec. Admin., Comm'r, 38 F.4th 892, 896 (11th Cir. 2022).

The following factors are relevant in an ALJ's consideration of a medical opinion or a prior administrative medical finding: (1) "[s]upportability"; (2) "[c]onsistency"; (3) "[r]elationship with the claimant"; (4) "[s]pecialization"; and (5) other factors, such as "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of [the SSA's] disability program's policies and evidentiary requirements." 20 C.F.R. § 404.1520c(c). Supportability and consistency are the most important factors,

---

[7]     Plaintiff filed his applications after the effective date of section 404.1520c, so the undersigned applies the revised rules and Regulations.

and the ALJ must explain how these factors were considered. 20 C.F.R. § 404.1520c(b)(2). Generally, the ALJ is not required to explain how he or she evaluated the remaining factors. 20 C.F.R. § 404.1520c(b)(2). However, if the ALJ "find[s] that two or more medical opinions . . . about the same issue are both equally well-supported . . . and consistent with the record . . . but are not exactly the same, [the ALJ must] articulate how [he or she] considered the other most persuasive factors . . . ." 20 C.F.R. § 404.1520c(b)(3).[8]

At issue are the state agency nonexamining medical opinions of Dr. Gerrish and Dr. Le (who both reviewed and relied in part on the examining opinion of Dr. Betances); the examining opinion of Dr. Choisser; and the nonexamining ME opinion of Dr. Lin. The opinions are briefly summarized.

Dr. Betances examined Plaintiff and authored a report on August 8, 2020. Tr. at 465-71. In relevant part, Dr. Betances opined under a "Limitations" section of the report that Plaintiff "is unable to lift more than 15 lbs" due to "present weakness on his right [h]and (unable to hold objects)" and has "[p]resent numbness and tingling sensation on his [r]ight [h]and." Tr. at 470 (some emphasis omitted). Dr. Betances also wrote under the "Medical Source

---

[8]    When a medical source provides multiple opinions, the ALJ is also not required to articulate how he or she evaluated each medical opinion individually. 20 C.F.R. §§ 404.1520c(b)(1), 416.920c(b)(1). Instead, the ALJ must "articulate how [he or she] considered the medical opinions . . . from that medical source together in a single analysis using the factors listed [above], as appropriate." 20 C.F.R. § 404.1520c(b)(1).

Statement (functional abilities and restrictions)" section that Plaintiff's "functional abilities are limited on his right upper extremity due to recent trauma" and "[h]is specific restrictions include work-related activities that required occasional standing, walking or lifting." Tr. at 470 (some capitalization and emphasis omitted).

Dr. Gerrish on August 17, 2020 reviewed the then-available medical evidence and opined Plaintiff could occasionally lift and/or carry 20 pounds, could frequently lift and/or carry 10 pounds, could stand and/or walk about 6 hours in an 8-hour day, could sit about 6 hours in an 8-hour day, and had unlimited ability to push and pull (except as to the carrying and lifting limitations). Tr. at 99. He could also occasionally climb ramps, stairs, ropes, and scaffolds. Tr. at 99, 110. He could occasionally balance, stoop, kneel, crouch, and crawl. Tr. at 99-100, 111. Plaintiff should avoid concentrated exposure to hazards. Tr. at 100, 111. Dr. Gerrish noted, "While MSO [Dr. Betances] limits lifting 15 lbs, I do think 20 lbs is within the range of acceptable lifting limits based on the evidence. Grip has overall been maintained. Gait is normal and no [assistive device] needed." Tr. at 101, 112.

On February 22, 2021, Dr. Le reviewed the evidence and affirmed Dr. Gerrish's opinion. Tr. at 123-27, 139-43. In so doing, Dr. Le specifically noted the "CE" opinion (that of Dr. Betances), that Plaintiff "is unable to lift more than 15 lbs, present weakness on his right [h]and (unable to hold objects)" and

also that Plaintiff has "[p]resent numbness and tingling sensation on his [r]ight [h]and" limiting his "functional abilities . . . on his right upper extremity." Tr. at 142. Dr. Le also noted Dr. Betance's "restrictions include[d] work-related activities that required occasional standing, walking or lifting." Tr. at 126, 142.

On June 10, 2021, Dr. Choisser examined Plaintiff at his counsel's request and authored a report, Tr. at 535-36, and a Physical Residual Functional Capacity Questionnaire, Tr. at 529-33. In part, Dr. Choisser opined Plaintiff would be off task 10% of the time. Tr. at 530. Plaintiff could walk 12 city blocks, he can sit 1 hour at a time, he could stand 1 hour at a time, and he could sit, stand, and walk at least 6 hours in a day. Tr. at 531. Plaintiff could occasionally lift and carry up to 10 pounds but not more. Tr. at 532. Plaintiff could occasionally look down, turn his head right and left, look up, and hold his head in a static position. Tr. at 532. Plaintiff could occasionally twist, stoop, crouch/squat, and climb stairs, and he could never climb ladders. Tr. at 532. Plaintiff had significant limitations in reaching, handling, and fingering that included being able to use his right hand to grasp, turn and twist objects only 10% of the time and his left hand 50% of the time. Tr. at 32. Plaintiff could use his right fingers for fine manipulation 10% of the time and his left fingers 50% of the time. Tr. at 532. Plaintiff could not reach overhead with his right arm, but could reach overhead 50% of the time with his left arm. Tr. at 532. Plaintiff

would miss about one day per month of work. Tr. at 532. He could not have any exposure to cold temperatures or perfumes. Tr. at 533.

On December 29, 2021, the ALJ requested that ME Dr. Lin, a neurologist, review the evidence and complete interrogatories about Plaintiff's ability to perform work. Tr. at 555. Dr. Lin completed the interrogatories on January 4, 2022. Tr. at 567-76. In part, Dr. Lin opined Plaintiff could continuously lift and carry up to 10 pounds and occasionally up to 20 pounds. Tr. at 567. According to Dr. Lin, Plaintiff could stand 1 hour at a time and walk 30 minutes at a time, with the ability to sit 5 hours total, stand 2 hours total, and walk 1 hour total in a workday. Tr. at 568. Plaintiff could reach, handle, finger, feel, and push/pull only occasionally with the right hand and continuously with the left hand. Tr. at 569. He could use both feet frequently for operation of foot controls. Tr. at 569. Plaintiff could occasionally balance, stoop, kneel, crouch, and crawl but could never climb stairs, ramps, ladders or scaffolds. Tr. at 570. Plaintiff could occasionally tolerate exposure to moving mechanical parts and operating a motor vehicle, could never be around unprotected heights, and could continuously tolerate all other relevant work environments. Tr. at 571. Dr. Lin also found Plaintiff was able to do a laundry list of specific daily-type activities, including: shopping, traveling without a companion, ambulate without assistance, walking a block at a reasonable pace on rough or uneven surfaces, using public transportation, climbing a few steps at a reasonable pace,

preparing simple meals, caring for his personal hygiene, and sorting/handling/using paper and files. Tr. at 572.

Here, the ALJ was quite thorough in her evaluation of the opinion evidence, except for her omission of a part of Dr. Betances' opinion. The ALJ wrote in relevant part regarding Dr. Betances:

> [Plaintiff] did not have any treatment, emergent or otherwise, until he was evaluated by consultative examiner, Pedro Betances, MD, on August 8, 2020. At the time, [Plaintiff's] main concerns were the right hand swelling and numbness causing trouble holding things, and weakness in the same arm. The review of systems also shows he complained of joint pain and stiffness, present at the time in his right side of the neck. The physical examination evidenced muscle spasm in his neck. However, there was no deformity, tenderness, and the straight leg raising test was normal in both seated and supine positions. He had swelling but it was slight, and he maintained full range of motion in all joints in his right hand. There was slightly reduced strength in the right extremities (4/5) and right grip (4/5). The rest of the neuromuscular testing was within normal limits, including dexterity, Romberg sign, and sensory examination. [Plaintiff] had normal gait and station, without difficulty walking, squatting, and rising, or getting on and off the examination table. His finger-nose test showed smooth accurate movement, without difficulty. He had a five-degree deficit in range of motion in all maneuvers of the cervical spine, and full range of motion in all other joints. <u>Dr. Betances opined [Plaintiff] is able to lift up to fifteen pounds with his right hand, without any other limitations listed</u>. The undersigned finds this opinion to be somewhat persuasive. This evaluation was done only five months after the accident, and it did not give a complete or specific opinion on the most [Plaintiff] could perform. It is also inconsistent with the rest of the

> record since there is generally no indication thereafter
> of swollen joints in the right hand or neck spasm.
> Although the undersigned agrees that at the time, due
> to the recency of the accident, he may have been limited
> to lifting 15 pounds, subsequent medical evidence of
> record, detailed further below, consistently found
> [Plaintiff] had normal gait and grossly unremarkable
> physical findings.

Tr. at 20-21 (citations omitted, emphasis added). As to the Drs. Gerrish and Le,

the nonexamining state agency physicians, the ALJ summarized their opinions

and wrote:

> Dr. Gerrish noted that [Plaintiff] reported he was
> independent in his activities of daily living despite his
> reported symptoms. He could walk without assistance,
> prepare simple meals, and do light cleaning and
> laundry. He was also able to dress and bathe himself
> independently, including open and close zippers and
> buttons with his left hand[]. Lock Kim Le, MD,
> reviewed the case at the reconsideration level and
> concurred with Dr. Gerrish's assessment. Dr. Le noted
> that the exams showed mild weakness on his right arm,
> and spinal examination evidenced muscle spasm on his
> upper back and neck area. However, his major joints
> were free of inflammation and pain, and he only had
> slight swelling in his right hand. Despite his claims of
> numbness and weakness, [Plaintiff's] gait was normal.
> The undersigned finds their opinions to be persuasive.
> Their opinions are consistent with the evidence of
> record at the time of their review. Subsequent evidence
> received at the hearing level does not support greater
> limitations and further reduction of the [RFC]. Aside
> from the one-time evaluation by Dr. Choissier, the
> overall medical evidence of record shows [Plaintiff] has
> some mild weakness in his upper extremity. The
> allegations of inability to stand or walk for prolonged
> periods of time are in contrast with his intact gait and
> normal neurological examinations as detailed above.

> Specifically, the primary care physician's records show [Plaintiff] had normal tone and strength, no tenderness on palpation, and grossly intact sensation and monofilament test. [Plaintiff] did not complain of any pain and was not taking any medications. Although he complained of pain and numbness during the neurosurgical evaluation, the physical examination showed good range of motion throughout and steady gait. Cranial nerves and sensation were intact, and muscle tone and strength were good throughout. Most notably, [Plaintiff's] gross and fine motor movements were also intact. Therefore, the undersigned finds the record, as a whole, is consistent with the State Agency medical consultants' determinations.

Tr. at 24-25 (citations omitted). Regarding the consultative examination and opinion by Dr. Choisser, the ALJ summarized the opinion on functional limitations and found as follows:

> Dr. William Choisser saw [Plaintiff] only one time, at his attorney's request to support litigation. Dr. Choisser is a family medicine physician, not a specialist in treating orthopedic or neurological conditions. Notably, he was not clear on whether active or passive range of motion was required of [Plaintiff]. He was not privy to the entire record as he reviewed only the records from Holmes Regional covering [Plaintiff]'s hospitalization from March to April 2020, and the consultative examiner's report from August 8, 2020. Dr. Choisser selected portions of the report that supported his diagnostic findings and omitted all the range of motion observations referenced by the consultative examiner. Specifically, he did not document the full range of motion on hand flexion, extension of finger joints; he did not record all range of motion for the right shoulder, or for the cervical spine. It should also be noted that there is no record of treatment or a diagnostic impression for a frozen right shoulder prior to his statement. He mentioned the reduced range of

> motion for the back, yet [Plaintiff] has not been consistently treating for a back impairment and did not specifically allege it as an impairment that disabled him. Consequently, the undersigned finds this opinion to be minimally persuasive as it is inconsistent with and generally not supported by the evidence of record.

Tr. at 22-23. And finally, as to Dr. Lin, the ALJ summarized the assigned functional limitations before again making detailed findings. Tr. at 23-24. The ALJ observed that Dr. Lin "relied almost entirely on Dr. William Choisser's evaluation and opinion" and wrote specific examples in support. Tr. at 23 (citation omitted).  The ALJ went on:

> [T]he entirety of the record does not support these limitations. In fact, the physical examination consistently showed [Plaintiff] had no gait disturbance and did not require any assistive device to ambulate. In his own report, Dr. Choisser noted [Plaintiff] had full range of motion of the hips and lower extremities, and negative straight leg raising test. He had slight reduction (4/5) in lower extremity strength. Moreover, during the consultative examination in August 2020, [Plaintiff] had normal gait and station. He had no difficulty walking, squatting, and rising, or getting on and off the examination table. A year later, his primary care physician noted [Plaintiff] denied having any difficulty walking and he was observed ambulating normally. The latest physical examination showed good range of motion throughout and steady gait. Thus, the restrictions in standing and walking, and operating foot controls are not supported by the objective evidence of record.

Tr. at 23 (citations omitted). The ALJ then explained why she found Dr. Lin overstated Plaintiff's postural limitations, ultimately finding that "these

limitations – especially the extreme limitation of never climbing even ramps or stairs is not well supported by the record in its entirety." Tr. at 24. The ALJ also addressed in detail Dr. Lin's assigned limitations regarding the use of Plaintiff's hands:

> Dr. Lin opined [Plaintiff] could use his right hand occasionally for reaching, handling, fingering, feeling, pushing, and pulling, and his left hand continuously for all maneuvers. The undersigned finds these limitations are not supported by the objective evidence of record. Although [Plaintiff] has reported some numbness and tingling in his hands, there have been no objective testing done to support his reports or a suggested diagnosis of neuropathy. Although during one evaluation he was found to have 3/5 strength in the right hand, the rest of the examinations in the record found only slightly decreased strength (4/5). Moreover, in the latest neurologic examination was unremarkable with grossly intact sensation and monofilament test. Furthermore, his primary care physician noted in February 2022 that his muscle tone and strength were good throughout and sensation was intact, and reflexes were physiologic throughout. [Plaintiff's] gross and fine motor movements were also intact. Therefore, although he may have had an exacerbation of symptoms, this appears to have been temporary. The undersigned has accounted for his slightly decreased strength in reducing his [RFC] to light. However, further reduction is not supported, and Dr. Lin's restrictions are inconsistent with the record as a whole.

Tr. at 24 (citations omitted). Finally, the ALJ addressed the other limitations assigned by Dr. Lin:

> Dr. Lin opined [Plaintiff] could have occasional exposure to moving mechanical parts and operating a

motor vehicle. However, he should never be exposed to unprotected heights.

When asked about specific activities, however, Dr. Lin indicated [Plaintiff] had no limitations. This included the ability to walk a block at a reasonable pace on rough or uneven surfaces; and, climb a few steps at a reasonable pace with the use of a single rail. To support these statements, he then relied on the neurologist and primary care physician's physical exams that were unremarkable. Dr. Cruz noted [Plaintiff's] position sense was intact in the toes as was vibration sense. He had no sensory loss to pinprick and gait was normal. He then cited Dr. Morales' findings of normal tone and intact motor strength, and normal gait. Also, he first opined [Plaintiff] could never climb, but then stated he could climb steps at a normal pace, this is clearly contradictory. Thus, Dr. Lin's opinion is internally inconsistent.

Consequently, due to the inconsistencies and contradictions, and the citing of specific physical examinations rather than an evaluation of the evidence in its entirety, the undersigned finds his opinion is not wholly persuasive.

Tr. at 24 (citations omitted).

The ALJ's articulated reasons for the persuasiveness (or lack thereof) regarding the various medical opinions are adequate and supported by substantial evidence. In challenging the ALJ's Decision, Plaintiff contends the nonexamining opinions are "outdated" and "inconsistent" with other opinions. Pl.'s Br. at 1; see id. at 1, 14. Of course, the nonexamining opinions occurred earlier in the administrative process—at the initial denial and reconsideration phases—as is typical. This timing does not, in and of itself, mean the opinions

are "outdated," though. Moreover, the actual medical evidence (sans other opinions) did not develop in such away after these nonexamining opinions were rendered so as to call into question their validity. The ALJ was careful to consider the entirety of the evidence, not just these opinions, in reaching the ultimate conclusion.

Plaintiff indicates that the nonexamining physicians and the ALJ failed to acknowledge part of Dr. Betances' opinion: that is, Plaintiff is unable to hold objects with his right hand and can only stand, walk, and lift occasionally. Pl.'s Br. at 13. However, Dr. Le (the reconsideration physician), specifically noted these restrictions assigned by Dr. Betances and rejected them. Tr. at 126, 142. Although the ALJ did not specifically mention these particular limitations in the Decision, the omission is harmless.[9] Dr. Le, on whom the ALJ partially relied, clearly took the limitations into account and rejected them. Moreover, other opinions of similar nature were specifically rejected by the ALJ, so sending the matter back to the ALJ to reconsider this portion would not serve a purpose.

Plaintiff generally contends the ALJ erred because of the election not to rely on the somewhat consistent opinions of Dr. Choisser and Dr. Lin. The ALJ,

---

[9]     They may have been overlooked because they were placed in a section of the opinion that one would not necessarily look to when searching for work-related limitations. <u>See</u> Tr. at 126, 142.

however, articulated numerous reasons for electing not to find these opinions persuasive, including that Dr. Lin relied heavily on Dr. Choisser to the exclusion of other medical evidence in the file. Tr. at 23-24. As well, the ALJ pointed to internal inconsistencies in Dr. Lin's opinion. Tr. at 24. Overall, it is evident the ALJ adequately took into account and explained the consistency and supportability factors, 20 C.F.R. § 404.1520c(b)(2), as well as the others, in arriving at her conclusions. The ALJ's findings are supported by substantial evidence and need not be disturbed.[10]

## B. Symptom Evaluation in Light of Inability to Afford Treatment

Plaintiff contends the ALJ erred in evaluating his subjective complaints of pain and other symptoms, particularly in light of his inability to afford treatment. Pl.'s Br. at 23-25. Responding, Defendant argues the ALJ adequately addressed Plaintiff's subjective complaints and particularly his claim about the alleged inability to afford treatment. Def.'s Mem. at 13-14.

---

[10]     Plaintiff makes much of his treating doctor stating shortly after his accident that surgery would be required in the near future. See, e.g., Pl.'s Br. at 3, 11, 14 (referring to Tr. at 434). Plaintiff contends the ALJ minimized the matter by stating, "He did not require surgical intervention at the time." Tr. at 20 (citation omitted). The ALJ's statement was technically accurate: Plaintiff did not require immediate surgical intervention. The treating doctor, however, believed it would be necessary in the future. The ALJ recognized Plaintiff's testimony to this effect: "He explained that he was advised he needed surgery on his neck but had not been able to see a specialist due to lack of insurance and financial backing." Tr. at 19. Overall, the ALJ did not mischaracterize this point so as to call into question her overall findings in the Decision.

"[T]o establish a disability based on testimony of pain and other symptoms, the claimant must satisfy two parts of a three-part showing: (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain." Wilson v. Barnhart, 284 F.3d 1219, 1225 (11th Cir. 2002) (citing Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991)). "The claimant's subjective testimony supported by medical evidence that satisfies the standard is itself sufficient to support a finding of disability." Holt, 921 F.2d at 1223.

The Regulations in effect at the time of the ALJ's Decision provided that an ALJ "will" consider the following factors related to symptoms such as pain:

> (i) [The claimant's] daily activities; (ii) The location, duration, frequency, and intensity of [the claimant's] pain or other symptoms; (iii) Precipitating and aggravating factors; (iv) The type, dosage, effectiveness, and side effects of any medication [the claimant] take[s] or ha[s] taken to alleviate [his or her] pain or other symptoms; (v) Treatment, other than medication, [the claimant] receive[s] or ha[s] received for relief of [his or her] pain or other symptoms; (vi) Any measures [the claimant] use[s] or ha[s] used to relieve [his or her] pain or other symptoms . . .; and (vii) Other factors concerning [the claimant's] functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. § 404.1529(c)(3)(i)-(vii); see Raper v. Comm'r of Soc. Sec., 89 F.4th 1261, 1277 (11th Cir. 2024). The factors must be considered "in relation to other

evidence in the record and whether the claimant's statements conflict with other evidence." <u>Raper</u>, 89 F.4th at 1277 (citation omitted); <u>see</u> 20 C.F.R. § 404.1529(c)(4). To reject the claimant's assertions of subjective symptoms, "explicit and adequate reasons" must be articulated by the ALJ. <u>Wilson</u>, 284 F.3d at 1225; <u>see also</u> <u>Dyer</u>, 395 F.3d at 1210; <u>Marbury v. Sullivan</u>, 957 F.2d 837, 839 (11th Cir. 1992).

"[B]efore denying an application based on a claimant's failure to comply with prescribed medical care, the ALJ must consider whether the claimant is able to afford the medical care." <u>Brown v. Comm'r of Soc. Sec.</u>, 425 F. App'x 813, 817 (11th Cir. 2011) (citing <u>Ellison v. Barnhart</u>, 355 F.3d 1272, 1275 (11th Cir. 2003)). A claimant's inability to afford medical care excuses his or her lack of such care. <u>Dawkins v. Bowen</u>, 848 F.2d 1211, 1213 (11th Cir. 1988) (stating that the court "agree[s] with every circuit that has considered the issue that poverty excuses noncompliance [with prescribed medical treatment]") (citations omitted). "Nevertheless, if the claimant's failure to follow medical treatment is not one of the principal factors in the ALJ's decision, then the ALJ's failure to consider the claimant's ability to pay will not constitute reversible error." <u>Id.</u> (citing <u>Ellison</u>, 355 F.3d at 1275).

Here, the ALJ relied to a degree on the large gaps in treatment in finding Plaintiff's symptoms are not as bad as he alleges. Tr. at 20, 21. Plaintiff did contend he was unable to afford the care and did not have proper insurance,

which the ALJ recognized in the Decision. Tr. at 19, 57. The ALJ aptly pointed out, however, that she asked Plaintiff about his attempts to get free or low cost treatment, and Plaintiff admitted he only called a facility that offered such treatment one time and did not hear back. Tr. at 19, 68-69. Among other reasons, the ALJ found the RFC "is supported by the gaps in treatment and the fact that [Plaintiff] maintained he attempted to obtain low-cost services, but later admitted he only called once." Tr. at 25. The ALJ adequately considered this matter and her findings are supported by substantial evidence.

### V.  Conclusion

The ALJ's Decision is supported by substantial evidence. In light of the foregoing, it is

**ORDERED**:

1.     The Clerk of Court is directed to enter judgment pursuant to sentence four of 42 U.S.C. § 405(g) and § 1383(c)(3), **AFFIRMING** the Commissioner's final decision.

2.     The Clerk is further directed to close the file.

**DONE AND ORDERED** in Jacksonville, Florida on February 21, 2024.

JAMES R. KLINDT
United States Magistrate Judge

kaw
Copies:
Counsel of Record